Carl ALESSANDRO, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (PRECISION METAL
CRAFTERS, LLC), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 2009.
Decided April 30, 2009.

OPINION BY Senior Judge FLAHERTY.

Carl Alessandro (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) suspending his benefits. We affirm.

Claimant sustained an injury to his cervical spine in the course and scope of his employment as a machinist on October 24, 2005. Claimant subsequently received payments of workers' compensation benefits based on an average weekly wage (AWW) of $841.29. On February 2, 2007, Precision Metal Crafters, LLC (Employer) filed a Suspension Petition alleging that Claimant's benefits should be suspended as of January 29, 2007 because Claimant refused to return to work made available within his physical restrictions. Employer subsequently amended its Petition to allege that Claimant was earning income performing auto body work for Mike's Car Lot and failed to report that income.

Claimant testified that on October 24, 2005, he felt a pop in the back of his neck while working for Employer. He tried to work in the days following his work injury but he was in constant pain. He required surgery. According to Claimant, he attempted to return to work for Employer at light duty, but he experienced pain that he could not tolerate.

Claimant acknowledged he began light paint work for Mike's Car Lot in early 2005. He did this at his home. Claimant explained that at the time of his work

injury, he had a car at his house that he was working on for the dealership. He attempted to finish the car after October 24, 2005 but could not do so. Claimant testified that his son finished the car. Claimant was paid cash for his services for Mike's Car Lot. He stated that he reported his earnings for the paint work that he earned in 2005 on his tax return. Claimant asserted, however, that he has not been physically capable to do any paint work since his injury.

Claimant stated that his wife does detailing work for Mike's Car Lot consisting of vacuuming, scrubbing interiors, cleaning the windows, and waxing the car. She did detailing work in 2006 and 2007. Her income from detailing was not reported for tax purposes because Claimant was under the impression that her income from detailing did not meet a perceived floor for reporting purposes. Claimant acknowledged he has gone to the dealership since his injury to either talk to his daughter who works there or to pick up a car for his wife.

Claimant presented the testimony of his wife, Wendy Alessandro, who stated Claimant has not done any auto painting at their house in 2006 or 2007. She stated, however, that she has done detailing work for Mike's Car Lot during that time period. She receives payment in cash.

Included in the record is an Affidavit completed by Claimant wherein he states:

6. Prior to my work injury when I worked as a machinist, I performed auto body work on a part-time basis. I have attempted to perform auto body-type work since my injury when possible, although my injury has severely limited my ability to perform this type of work.

*I have earned less part-time income performing auto body work subsequent to my work injury than I was earning prior to my work injury.* (Emphasis added).

Reproduced Record, p. 242a. (R.R. at ——).

Claimant submitted his 2005 tax return filed jointly with his spouse. The couple reported $6,540.00 in income from "side jobs." R.R. at 244a. The 2006 joint tax return, also included in the record, fails to indicate any extra income derived from any side job.

Employer presented the testimony of Michael J. Bartow, owner of Mike's Car Lot, who stated that he met Claimant in 2005 and they came to an agreement that Claimant would do some paint work for him. He added that he has not had a person to paint his vehicles since Claimant got hurt but wishes he did because "that's where the money is at, like the cheap cars that need paint work and stuff like that." R.R. at 142a–143a. Mr. Bartow asserted that Claimant did some paint work on about six cars. He acknowledged all payments were in cash and there were no records of these transactions. He agreed Claimant's son attempted to do some paint work on a few cars after Claimant's injury. Claimant's son, per Mr. Bartow, did not do a good job, however, and no further paint work was offered.[1]

Mr. Bartow stated Claimant's wife did detailing work for him. He thought, however, that she was doing the work in tandem with Claimant's son. This was done only a few times and the cash payments were given to the son.

Employer further presented the testimony of Anthony May who was obtained

---

1. Despite Mr. Bartow's proclamations that Claimant's son did a terrible job painting cars, Mr. Bartow asserted that the son was doing paint work as late as September 29, 2006. Mr. Bartow expressed that Claimant's son was doing work at this time when confronted with an investigative report that indicated Claimant was at the dealership on September 29, 2006 picking up a brown van. R.R. at 155a.

to conduct surveillance on Claimant. He attempted to observe Claimant on September 20, 2006, September 21, 2006, September 24, 2006, September 28, 2006, September 30, 2006, and December 2, 2006. On September 20, 2006, Mr. May observed Claimant go on a shopping trip. He did not see Claimant on any of the other dates. He never observed Claimant painting any vehicles. There were vehicles located at Claimant's home, however, on those dates. He added that on November 10, 2006, he spoke to Mr. Bartow. According to Mr. May, Mr. Bartow provided the following information:

> Carl Alessandro ... was painting all of his vehicles from his residential garage. Mr. Alessandro would come into the business and pick up the vehicles and take them back to his residential business ... Mike said that Mr. Alessandro would be showing up at the business to pick up a truck [in the] afternoon ...[2]

R.R. at 177–178a.

Employer submitted several surveillance reports into the record. Included were the notes from Mr. May from his conversation with Mr. Bartow. Mr. May indicated in his report that "[t]he source confirmed that the subject paints all vehicles and has three vehicles in line to paint." (Employer's Exhibit F). Further, Employer submitted surveillance video. (Employer's Exhibit G). Of particular relevance are recordings of Claimant on September 29, 2006 and October 31, 2006. On September 29, 2006, Claimant is seen at Mike's Car Lot examining the outside of a brown van at 2:20 p.m. Claimant left the premises in this vehicle. Claimant was again seen on the lot on October 31, 2006 at 3:18 p.m. On this occasion, Claimant examined a truck. He leaned and stooped while doing so in an apparent attempt to get a closer look at the body of the vehicle. This surveillance was conducted by an individual with the initials "AB" as reflected in the surveillance reports. This individual did not testify in this matter.

Employer also presented the testimony of Betsy Blazek–O'Neill, M.D., board certified in physical medicine and rehabilitation, who examined Claimant in November of 2006. Upon examination, Dr. Blazek–O'Neill observed calluses on Claimant's right palm and ground in dirt on his right hand. This indicated use of the right hand for functional purposes.

By a decision dated January 25, 2008, the WCJ found that Claimant was released to full time light duty work as of November 29, 2006. She determined, however, that Employer failed to offer Claimant a position within his physical restrictions. Nonetheless, the WCJ concluded that the evidence of record established that Claimant earned income painting cars for Mike's Car Lot. The WCJ noted that Mr. Bartow paid cash for the work performed and maintained no records for the transactions. Inasmuch as Claimant denied working for the dealership after his work injury, she concluded Employer had no means of obtaining information regarding Claimant's income. Consequently, the WCJ suspended Claimant's benefits until such time that Claimant provides information regarding his current earnings with Mike's Car Lot. The WCJ suspended benefits effective September 29, 2006, the date Claimant was first observed on surveillance video picking up a vehicle for painting.

---

2. Claimant's counsel objected to Mr. May's testimony regarding what Mr. Bartow told him. Claimant's counsel failed to preserve this objection in writing as no list of preserved objections is contained in either the reproduced or original records. Section 131.66(b) of the WCJ Rules instructs that objections made during a deposition shall be preserved in a separate writing and submitted prior to the close of the evidentiary record. 34 Pa.Code 131.66(b).

In rendering her decision, the WCJ credited Mr. May's testimony.[3] The WCJ further credited Claimant's testimony concerning his duties while working for Employer, the circumstances of his work injury, and the medical treatment he received before and after his injury. The WCJ rejected Claimant's testimony, however, concerning whether he earned any income as a result of doing paint work for Mike's Car Lot. In rejecting Claimant's testimony on this issue, the WCJ found Claimant's testimony given at hearing and deposition was inconsistent with the statements he made in his Affidavit. Specifically, she indicated that Claimant testified that he had not done any paint work for the dealership subsequent to his injury except to finish the car he had started to work on prior to October 24, 2005. Yet, he stated in his Affidavit that he attempted to perform auto body work following his injury "when possible," but he has earned less part-time income performing auto body work subsequent to his work injury. The WCJ reasoned that although he was earning less income from this venture, he was still earning income.

The WCJ added that Claimant was filmed looking over the outside of the vehicles. The WCJ proffered that he would not need to inspect the outside of an automobile if he was merely taking it home for his wife to do detail work. Furthermore, the WCJ noted Dr. Blazek–O'Neill observed calluses and ground-in dirt on Claimant's right hand upon examination.

The WCJ rejected Mrs. Alessandro's testimony that although Claimant picked up cars from the dealership subsequent to his injury, he brought them home only for her to do detail work. The WCJ reasoned that Claimant's wife's statements that her husband no longer performs paint work are inconsistent with the contents of Claimant's Affidavit as well as the fact that Claimant was the one who picked the vehicles up.[4]

The WCJ further rejected Mr. Bartow's testimony. She noted that although Mr. Bartow testified that Claimant had not done any work for him since his injury, he told Mr. May in November of 2006 that Claimant painted all his vehicles and that he had three vehicles ready for him to pick up. The WCJ further found it curious as to why Mr. Bartow would not have obtained a new painter after October 24, 2005 if Claimant could no longer perform the job in light of his belief that "painting cheap cars was where the money was at." R.R. at 267.

The Board affirmed the WCJ's decision in an opinion dated November 7, 2008. This appeal followed.[5]

---

3. The WCJ is the final arbiter of witness credibility and the weight to be accorded evidence and may accept or reject the testimony of any witness in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth. 1995).

4. The WCJ found Claimant's joint tax returns to be of little value. She acknowledged the 2005 return denotes $6,540.00 in "side jobs." She pointed out, however, that the nature of these side jobs was unspecified. Further, although Claimant and his wife agreed Ms. Alessandro did detail work for Mr. Bartow in 2006, any such income earned is not reflected in the 2006 return.

5. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997 (Pa. Cmwlth.2007). The appellate role in a workers' compensation case does not include the reweighing of evidence or reviewing the credibility of the witnesses. *Lehigh County Vo–Tech Sch. v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). On appeal, the prevailing party below is entitled to all inferences that can be reasonably drawn from the evidence. *Kru-*

■ ·Claimant argues on appeal that there is no substantial, competent evidence of record to establish he was· engaged in any type of employment on and after September 29,. 2006. He contends that he was only captured on video at Mike's Car Lot on one occasion and that the video fails to depict him performing any income generating activity. Rather, he is only standing in the lot talking to another individual and looking at a vehicle.[6] Claimant posits that while he tried to paint subsequent to his work injury, he was unsuccessful. According to Claimant, the WCJ's finding that he is currently performing work for Mike's Car Lot is nothing more than unfounded speculation.

Claimant further contends that testimony of record establishes that his son and his wife perform auto detailing work for Mr. Bartow. Yet, the WCJ rejected their testimony and concluded that because Claimant was seen examining an automobile on videotape and drove the vehicle off the lot, he was the one who was to work on the vehicle. This is so, suggests Claimant, despite the fact that his wife's testimony was uncontradicted. Moreover, Claimant asserts that the WCJ's decision is not a reasoned decision and is inconsistent because he credits Claimant's testimony in part but rejects his testimony where it is contrary to his Affidavit. Claimant proffers that his testimony is not inconsistent with his Affidavit.

Finally, Claimant contends there was no basis for the WCJ to reject Mr. Bartow's testimony. He contends that Mr. Bartow's testimony was consistent throughout the entirety of his deposition. According to Claimant, the WCJ rejected Mr. Bartow's

testimony solely because it was purportedly inconsistent with a statement he gave Mr. May in November of 2006 that is undoubtedly hearsay.

Section 306(b)(1) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(1), provides that the claimant shall receive 66 2/3% of the difference between·his pre-injury wage and his current salary. The party seeking to change the status quo has the burden of proof. *Department of Pub. Welfare Polk·Ctr. v. Workers' Compensation Appeal Board (King),* 884 A.2d 343 (Pa.Cmwlth.2005). *See also Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer),* 710 A.2d 1256 (Pa.Cmwlth.1998).

■ Hearsay is an out-of-court statement offered to prove the. truth of the matter asserted. *Bonegre v. Workers' Compensation Appeal Board (Bertolini's),* 863 A.2d 68, 72 (Pa.Cmwlth.2004). "Double hearsay" is present when there is an out-of-court declaration contained in another out-of-court declaration. *Guthrie v. Workers' Compensation Appeal Board (Travelers' Club, Inc.),* 854 A.2d 653 (Pa. Cmwlth.2004). In order for these declarations to be admissible, the reliability and trustworthiness of each declarant must be independently established. *Id.* at 659. This requirement is satisfied when each statement comes within an exception to the hearsay rule. *Id.* at 660.

■ Nonetheless, hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding if it is corroborated by any competent evidence of record. *Walker v.*

---

*mins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby),* 133 Pa.Cmwlth. 211, 575 A.2d 656 (1990).

**6.** Claimant's arguments on appeal concern what he is and ·is not shown doing on the

surveillance video. He does not raise an issue regarding authentication of the videotape. Moreover, contrary to Claimant's assertion, Claimant is shown on video at the dealership on two occasions, not one.

*Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976). But, a finding based solely on hearsay will not stand. *Id.* at 370. This legal precedent is deemed the "Walker Rule" and is applicable in workers' compensation cases. *Rox Coal Co. v. Workers' Compensation Appeal Board (Snizaski)*, 570 Pa. 60, 807 A.2d 906 (2002). *See also Benson v. Workmen's Compensation Appeal Board (Haverford State Hosp.)*, 668 A.2d 244 (Pa.Cmwlth.1995).

■■■■ Moreover, this Court has traditionally approached surveillance films with distrust. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Med. Ctr.)*, 721 A.2d 1167 (Pa.Cmwlth. 1998). Films taken by one party to a lawsuit are necessarily suspect. *Thompson v. Workmen's Compensation Appeal Board (Bethlehem Steel Corp. Freight Div.)*, 683 A.2d 1315 (Pa.Cmwlth.1996). Surveillance evidence alone is not sufficient to satisfy a party's burden, but such evidence is admissible to help establish facts. *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa. Cmwlth.233, 642 A.2d 1153 (1994).

Mr. May indicated that Mr. Bartow informed him on November 10, 2006 that Claimant did paint work for his dealership and that Claimant was expected to pick up a vehicle that day. Mr. May further indicated in his report that, per Mr. Bartow, three vehicles were going to have paint work done by Claimant. Moreover, Claimant was seen on surveillance video on two separate occasions in the fall of 2006, one year after Claimant's work injury, closely examining the outside of some vehicles at the dealership. All of this evidence tends to show that Claimant was performing work for Mike's Car Lot after his injury despite the testimony of he and his wife.

Of course, the statements purportedly made by Mr. Bartow to Mr. May and the images depicted on the surveillance video are problematic. Mr. May's testimony concerning what Mr. Bartow told him inside of the dealership, specifically that Claimant does all of his paint work, is, as Claimant indicates, an out-of-court statement offered for the truth of the matter asserted. Mr. May's statements are hearsay consistent with *Bonegre.* Moreover, Mr. May never testified Mr. Bartow informed him that he had three cars lined up for Claimant to work on. Rather, this information is contained in the written surveillance reports included in the record. Consequently, per *Guthrie*, there is a double hearsay issue. We reiterate that Mr. Bartow denied that Claimant worked for him after his October 24, 2005 injury. Mr. Bartow was not questioned about prior inconsistent statements at his deposition given months after surveillance was concluded.[7]

Furthermore, although there is surveillance evidence on record, even Employer must concede that out of all the events captured on tape, one particular type of event is notably absent. Claimant is not shown painting any vehicle. We agree, as the WCJ has found, that Claimant is

---

7. This Court acknowledges that Mr. Bartow may not have been questioned about any presumed inconsistent statements made previously as both parties' counsel may have simply wanted to get his deposition over as quickly as possible after the way Mr. Bartow conducted himself at the deposition. He clearly made it known that he did not feel he should have to be burdened with taking an hour out of his life to testify in the proceedings. Indeed, in referring to Claimant and the litigation, Mr. Bartow explained, "[i]t's really his problem, not mine." R.R. at 154. Interspersed through his testimony is enough profanity to garner the deposition transcript an "R" rating. Mr. Bartow's need to put himself above all others is disheartening inasmuch as another man's financial livelihood was at stake.

shown closely examining the outside of a van and a truck. Moreover, Claimant ultimately drives off in the van after concluding his visual inspection. Nonetheless, *Murphy* and *Thompson* dictate that we view these images with distrust. We do not hesitate to point out that there may be other logical explanations for Claimant's activities shown on the tape other than the fact that he was examining the vehicles as part of the beginning stages of the painting process. For instance, Mr. Bartow may have complained about some scratches in the paint on the van or the truck and Claimant was looking at them for himself. Further, Claimant may have merely been cautious to inspect the van for pre-existing body damage before accepting possession of it to deliver to his wife for detailing. His actions do not necessarily mandate that we conclude Claimant took either vehicle to do some touch up work.

■ Ultimately, however, we must consider Claimant's Affidavit and the WCJ's interpretation of this document. The WCJ seized upon Claimant's statement that "I have earned less part-time income performing auto body work subsequent to my work injury than earning prior to my work injury." This statement is an admission of a party and falls within an exception to the hearsay rule, Pa.R.E. 803(25). An admission of an opposing party can be used as substantive evidence. *Kolenkiewicz v. Workers' Compensation Appeal Board (SKF USA, Inc.)*, 730 A.2d 1054, 1059

(Pa.Cmwlth.1999), citing *Senecal v. Workmen's Compensation Appeal Board (Walsh Assoc.)*, 57 Pa.Cmwlth.180, 425 A.2d 1200 (1981).

The WCJ found that even if Claimant was earning less income doing body work after his work injury than he was generating prior to his work injury, he still acknowledged in the Affidavit that he was earning income. This admission can be treated as substantive evidence that can serve as corroborative evidence to the hearsay statements purportedly made by Mr. Bartow as testified to by Mr. May that Claimant did all of the paint work for Mike's Car Lot.[8] Mr. May's statements must be given their natural probative effect. *Walker, Snizaski, Benson*. While Claimant's counsel initially objected to this testimony at the deposition, the objection was not preserved in writing as required by Section 131.66(b) of the WCJ Rules. Furthermore, although the surveillance video in and of itself is insufficient to satisfy Employer's burden, it is admissible to establish facts. *Rossi*. Considering the contents of this video in the context of Mr. Bartow's statements to Mr. May and, more importantly, Claimant's Affidavit, the images are further probative of the fact that Claimant does paint work for the dealership. Finally, as noted by the WCJ, Dr. Balazek–O'Neill detected calluses and dirt on Claimant's right hand suggesting Claimant has done some physical work.

---

8. It is arguable that the surveillance reports may qualify as an exception to the hearsay rule on their own. Pa.R.E. 803(6) provides an exception to the hearsay rule for items contained in business records kept in the course of regularly conducted business activity. We are mindful, however, of the Supreme Court's proclamation in *Commonwealth of Pennsylvania v. Cousar*, 593 Pa. 204, 230, 928 A.2d 1025, 1040, fn. 10 (2007), that statements of an outside party included in a business record are not accorded a presumption of accuracy and are not admissible as an exception to the hearsay rule under Pa.R.E. 803(6). Inasmuch as the non-hearsay statements contained in Claimant's Affidavit are corroborative of these hearsay statements, they may be considered by the WCJ consistent with the Walker Rule. As such, we will forego any further exploration as to whether Mr. May's recollection of what he was told by Mr. Bartow as indicated in the surveillance reports can independently support a finding of the WCJ.

As indicated above, the WCJ rejected Claimant's testimony on the issue of whether he was doing work for Mike's Car Lot subsequent to his October 2005 work injury.[9] She further rejected Claimant's wife's testimony as well as that of Mr. Bartow. Instead, the WCJ credited Employer's evidence, specifically that of Mr. May. She provided a detailed explanation for her credibility determinations as stated previously in order to satisfy the reasoned decision requirement of Section 422(a) of the Act, 77 P.S. § 834.[10] Based on the credible evidence of record, Employer met its burden of establishing Claimant was generating earnings sufficient to entitle it to relief. *King, Wickizer.*

We acknowledge Claimant's assertion that the content of his Affidavit was merely a reflection of the fact that he had to finish up the car he began working on prior to his work injury and that the pay he received after the work incident was for that one car. Indeed, this is admittedly a very close case. The problem, however, is that *Wolfe,* precludes us from reweighing the evidence. Further, Employer, as the party prevailing party below, is entitled to all reasonable inferences that can be drawn from the evidence. *Libby.* The WCJ's interpretation of the Affidavit when viewed with the corroborative evidence gained during surveillance is a reasonable one. We will not disturb it on appeal.

■ Claimant next argues assuming he did work for Mike's Car Lot, the WCJ erred in suspending his benefits entirely as opposed to merely modifying them. According to Claimant, his tax returns for 2005 show that he earned $6,540.00 in side jobs during that tax year. Claimant asserts that this income is attributable to the income he earned doing paint work for the dealership and that broken down over the course of a year, he earned $125.00 per week working for Mike Bartow.[11] Inasmuch as he had an AWW of $841.29, Claimant contends he is entitled to some level of partial disability.

Claimant's argument is flawed. Claimant denied he worked for Mike's Car Lot subsequent to his work injury. Mr. Bartow also denied that Claimant performed any work for him subsequent to October 2005. These individuals' testimony was rejected on this issue. Claimant's reported earnings in his 2005 tax return are not necessarily representative of what he is earning at the present time. Unfortunately, both Claimant and Mr. Bartow stated that when payments are made, they are made in cash. There is no record of any transactions. Based on this factual scenario, the WCJ was left with no choice but to suspend Claimant's benefits. *See*

9. Even though the WCJ credited portions of Claimant's testimony, she was permitted to reject Claimant's testimony in part consistent with *Greenwich Collieries.*

10. Section 422(a) of the Act provides, in pertinent part:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

11. $6,540.00 ÷ 52 # $125.77.

*Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co.)*, 782 A.2d 1077 (Pa.Cmwlth.2001)(holding a claimant who refuses to provide financial information necessary to ascertain whether a claimant is working, may have his indemnity benefits suspended until such information is provided).

Claimant finally argues that despite his repeated proclamations that he has not worked for Mike's Car Lot since October of 2005, the WCJ suspended his benefits until he provides information regarding his current earnings. Claimant asserts that because he has not done any work for the dealership subsequent to his work injury, it is impossible for him to produce this information as it does not exist. He contends that he is permanently precluded from having his suspension lifted and that this is not permitted by the Act.

Despite Claimant's current assertions, the WCJ rejected Claimant's evidence that he does not currently do work for Mr. Bartow. Instead, relying on Claimant's own Affidavit in conjunction with the evidence obtained on surveillance, found that Claimant is doing work for Mike's Car Lot. This finding is supported by the record, based on the WCJ's credibility determinations that are not reviewable, and must be considered as fact. Thus, consistent with *Brehm*, the WCJ made no error in suspending Claimant's benefits. Claimant can have the suspension lifted by presenting evidence of his earnings. Alternatively, he can present evidence that his medical condition has changed to the point where a reinstatement of benefits is warranted. *See generally Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994).(noting both one's physical capacity to do work and job availability may affect the extent of a claimant's loss of earning power).

After a review of the record, we conclude that the Board did not err in affirming the WCJ's order as all findings are supported by substantial evidence. Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 30th day of April, 2009 the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.