# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Marinack,                                    :
                              Petitioner             :
                                                     :
          v.                                         :  No. 871 C.D. 2015
                                                     :  Submitted: September 25, 2015
Workers' Compensation Appeal                         :
Board (City of Pittsburgh Fire Bureau),              :
                              Respondent             :


BEFORE:     HONORABLE DAN PELLEGRINI, President Judge[1]
            HONORABLE MARY HANNAH LEAVITT, Judge[2]
            HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                     FILED: February 19, 2016


          Kenneth Marinack (Claimant), *pro se*, petitions for review of an
adjudication of the Workers' Compensation Appeal Board (Board) suspending his
disability compensation.  In doing so, the Board affirmed the conclusion of the
Workers' Compensation Judge (WCJ) that because Claimant did not give his
employer the information needed to determine his earnings, the employer met its
burden for a suspension of benefits.  We affirm.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President
Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt
became President Judge.

On May 21, 2004, Claimant was injured while doing his job as a firefighter for the City of Pittsburgh Fire Bureau (Employer), which accepted liability for a torn rotator cuff and aggravation of lumbar disc disease. Employer paid Claimant total disability benefits in the amount of $690 per week, the maximum compensation amount for any claimant injured in 2004. At the time of his injury, Claimant also had earnings from his contracting business called Marinack Enterprises. When an elderly couple complained to Employer that Claimant did not finish the job for which they had paid in full, Employer referred the matter to the City's Fire Trial Board. The Board concluded that Claimant had acted unethically, and Employer fired Claimant in April 2005. Claimant continued to receive total disability benefits.

In September 2008, Employer filed a suspension petition, asserting that Claimant, who was capable of doing a light-duty job, was not working because he had retired. Retirement rendered Claimant ineligible for further disability compensation. Claimant denied that he had retired and asserted that he remained totally disabled by his work injury. In the alternative, Claimant asserted that he had looked for work. The matter was assigned to WCJ Nathan Cohen.

Claimant testified that after the 2004 contracting job that led to his firing, he did not do any other work through Marinack Enterprises. Claimant also testified that he was totally disabled but stayed attached to the job market by pursuing jobs through the Office of Vocational Rehabilitation.

WCJ Cohen granted the suspension petition. The WCJ found that Claimant had not made a good faith effort to find work within his medical

restrictions.  Claimant appealed.  Before the Board, Claimant argued that he had, in fact, done other contracting jobs,[3] which he could document.

On December 27, 2010, Employer filed the instant petition to suspend or modify Claimant's benefits.  Employer requested a hearing to obtain further information on Claimant's earnings, including tax returns for all relevant years.  Employer's suspension petition was assigned to WCJ Irving Bloom.[4]

Employer secured subpoenas from the WCJ directing Claimant to turn over to Employer any and all records of employment or self-employment done by Claimant directly or through Marinack Enterprises from 2004 onward, including "tax returns, payroll records, contracts, agreements, insurance policies, bank statements, accounts receivable, expenses and business filings."  Employer's Exhibits J and K.[5]

In support of its suspension petition, Employer submitted Claimant's March 16, 2009, deposition from the litigation before WCJ Cohen.  Employer's

---

[3] Concluding that Claimant had not retired, the Board reversed the suspension, and this Court affirmed.  *See City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, 37 A.3d 39 (Pa. Cmwlth. 2012).  The Supreme Court vacated our order and remanded for reconsideration in light of the Supreme Court's decision in *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 67 A.3d 1194 (Pa. 2013).  *See City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, 81 A.3d 882 (Pa. 2013).  This Court then remanded the matter for the WCJ to reconsider the record in light of the clarified burden of proof set forth in *Robinson*.  *See City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, (Pa. Cmwlth., No. 100 C.D. 2011, filed January 8, 2015).  This litigation does not depend on the outcome of the prior case.

[4] Claimant filed a review petition alleging that the description of his work injury was incorrect and a penalty petition alleging that Employer failed to timely pay him benefits to which he was entitled.  WCJ Bloom denied the review petition and granted the penalty petition.  Neither party appealed these aspects of the WCJ's decision.

[5] Because this Court granted Claimant's application to proceed *in forma pauperis*, there is no reproduced record.

Exhibit F. Therein, Claimant testified that after his 2004 work injury, he had to hire someone to help him finish the job for the elderly couple. Claimant testified that after that job, he did not do any other work.

Employer submitted WCJ Cohen's October 27, 2009, decision suspending benefits. Of note, WCJ Cohen found that Claimant received checks made out to "cash" totaling $11,000 from the elderly couple for the 2004 contracting job. Claimant stated he did not report the $11,000 as income because he actually lost money on the project.

Employer also submitted documents from Claimant's appeal of WCJ Cohen's decision. In that appeal, Claimant argued that WCJ Cohen erred in finding that Claimant had withdrawn from the workforce, explaining as follows:

> I sincerely believe that once you review the case, you will see that [WCJ] Cohen's conclusions were at the very least, flawed. … I tried to find employment within my stated limitations with an established company, but was unable to secure any position at all. … I therefore thought that my best possible course would be to pursue a "self-employment" type of position (ie… Marinack Enterprises). This way I could have a direct influence on the type and parameters of each specific project I would secure. So, that is exactly what I did. I sought out and obtained several projects which were within my capabilities and or limitations.
>
> *When [WCJ] Cohen stated I was not seeking employment faithfully by his standards.. [sic] I was in fact actually employed, that is "self-employed" working as an independent contractor on several projects. The evidence of which is included within this appeal.*

Employer's Exhibit E at 1-2 (emphasis added).

Employer submitted a transcript of the oral argument before the Board, where Claimant stated that he did occasional contracting work and, thus,

4

remained attached to the workforce. Employer's Exhibit G, at 18. Claimant also informed the Board that he had intended to present evidence about his self-employment before WCJ Cohen but never had the opportunity, explaining:

> I have evidence that I planned to submit [to WCJ Cohen]. I have several letters. I have documentation of the jobs that I did for the people I did them for. Letters by the people --

Employer's Exhibit G, at 16.

Employer submitted various LIBC-750 forms, entitled "Employee Report of Wages and Physical Condition," and LIBC-760 forms, entitled "Employee Verification of Employment, Self-Employment or Change in Physical Condition," that Claimant had completed. Employer's Exhibit L. In the 2006, 2007 and 2008 forms, Claimant stated that he had no wages to report. Claimant submitted no forms for 2009 and 2010.[6] On forms dated January 25, 2011, Claimant reported that he had done small handyman-type jobs from December 1, 2008, to December 3, 2009. As to the wages earned, he stated: "Not sure of exact amount. I will have to search records. Approx. under $2,500.00." On forms dated March 6, 2011, Claimant again reported self-employment from December 1, 2008, to December 3, 2009, but estimated his wages as "less than $1,500" and stated "[I am] trying to find the records to get a more accurate total." Claimant reported the same information on forms dated April 6, 2011. On forms dated July 29, 2011, August 20, 2011, and January 13, 2012, Claimant reported that he had been self-

---

[6] While Claimant's benefits were suspended pursuant to WCJ Cohen's order, Employer did not send Claimant any forms to complete. When the Board reversed the suspension in late 2010, Employer resumed sending Claimant forms.

employed from May 1, 2009, to December 1, 2009, and earned "less than $1,500 gross."

Claimant testified before WCJ Bloom. Claimant described Marinack Enterprises as a small business registered with the Department of State. Claimant could not recall whether Marinack Enterprises had a checking account but stated that it did not have any insurance policies or payroll records, and it did not file tax returns. Claimant testified that he did all of the work for Marinack Enterprises and had no employees. When reminded that he hired someone to help him with the 2004 project, Claimant responded that he could not remember the person's name, whom he paid in cash.

Claimant testified that during the prior suspension litigation, his attorney advised him to look for employment. Accordingly, in 2009 he did "some small handyman repair type stuff" for a realtor at a property being prepared for sale. Notes of Testimony (N.T.), November 21, 2011, at 10. Claimant estimated that he did three to five such projects. Claimant testified that he had neck surgery in December 2009 and did not do any more handyman work after that. Claimant testified that only in 2009 did he receive self-employment wages while also collecting workers' compensation. Claimant acknowledged that he did not immediately report his self-employment wages because his prior attorney told him not to have any contact with Employer. Claimant testified that he did inform Employer of his self-employment earnings by completing the LIBC forms in 2011,

6

which he approximated because he had not figured out his costs, as needed to determine his actual earnings. *Id.*at 36.[7]

In response to Employer's subpoenas, Claimant initially produced three work proposals entitled "Marinack Enterprises;" two checks from Keystone Closing Services from August 2009 for $750 and $350; and several pages of invoiced expenses for three jobs. Employer's Exhibit I. Claimant testified that he produced all the documents he found but could not confirm that they were complete. Claimant testified that he had difficulty locating his documents because he lost his apartment after WCJ Cohen suspended his benefits, forcing him to put things in storage.

After the instant litigation began, Claimant obtained counsel. Claimant turned over documents concerning the 2004 job for the elderly couple, and produced credit union and bank statements from storage.[8] Claimant submitted a letter from the IRS confirming that neither Claimant nor Marinack Enterprises has filed tax filings after his 2004 work injury. Claimant testified that there were no other documents concerning his work through Marinack Enterprises.

---

[7] Claimant did not report his income to the IRS because he estimated it was less than $1,000 and he mistakenly believed he was not required to file a tax return for such a small amount of income.

[8] As to these banking records, the WCJ noted:

> Claimant did not provide any explanation of the same, but instead simply submitted everything to allow this [WCJ] and [E]mployer to sort out the relevance of the information therein. Yet, and as noted above, the deposits reflected in these documents – which are again incomplete as to the time frames at issue – do not correlate with the [C]laimant's testimony and evidence as to his self-employment earnings and family loans during this time frame.

WCJ Bloom Decision, March 27, 2014, at 16; Finding of Fact No. 39(j).

Claimant testified that after WCJ Cohen's suspension order, he did not collect disability compensation from October 28, 2009, through February 27, 2011. Claimant testified that he was not employed during that time and had no earnings. He got by with assistance from family members.

WCJ Bloom found Claimant's testimony about his business to be evasive and inconsistent.[9] The WCJ noted that Claimant changed his position, depending on his claim status. For example, in the prior litigation, Claimant stated that he was totally disabled. Only after his benefits were suspended by WCJ Cohen did Claimant disclose his self-employment. The WCJ found as follows:

> Thus, and when [C]laimant benefitted from averring that he was not working during litigation, he was either unable to work or simply not working. When the [C]laimant benefitted from averring that he was working during litigation, he was able to produce limited information suggesting he was working, but with little "income" by his own report. Claimant would have this Workers' Compensation Judge believe that the only time he had self-employment earnings was in 2004 (when his self-employment came to light and resulted in his discharge) and in 2009 – which only commenced after his March 2009 deposition, but only disclosed after he did not prevail.

WCJ Bloom Decision, March 27, 2014, at 16; Finding of Fact No. 40. Further, Claimant was inconsistent about the number of his projects and how much he earned. The WCJ specifically found:

> This Workers' Compensation Judge recognizes that [C]laimant would allege that this was a "small business" and that he made little to no money. However, and for this Judge to credit the same, then [C]laimant must be found credible. Simply stated,

---

[9] The WCJ has complete authority over questions of credibility and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

[C]laimant is not found credible. Further, [C]laimant asserts that following expenses, he made no money, yet, and again, he seemingly has little to no records – which would be in his sole possession – to confirm that he made no money, or that his expenses resulted in "no income."

\*\*\*

This Workers' Compensation Judge recognizes that [C]laimant may now have difficulty securing and/or locating information from 2009 relative to self-employment, yet this cannot excuse [C]laimant herein. After all, if [C]laimant had properly produced information and reported his income as required at said time, there would be no issue.

*Id*. at 16-17; Finding of Fact No. 40. The WCJ summarized Claimant's credibility problem as follows:

This case thus presents this Workers' Compensation Judge with one of two options as to [C]laimant's credibility. At worst, [C]laimant has knowingly misrepresented and/or withheld information as to his self-employment at various times during his claim. If this is the case, then [C]laimant cannot benefit from his own malfeasance. At best, [C]laimant was mistaken as to what had to be reported and when it was to be reported, and otherwise engaged in poor record keeping to confirm his averments. Yet, neither alternative allows this [WCJ] to find him credible or to find in his favor.

*Id*. at 17; Finding of Fact No. 42.

The WCJ concluded that under these circumstances, where Claimant's earnings cannot be determined, "a suspension is fully justified." *Id*. at 17; Conclusion of Law No. 2. Accordingly, the WCJ suspended Claimant's benefits as of June 2009.[10]

---

[10] The WCJ dismissed Employer's modification request as moot.

9

Claimant, through counsel, appealed to the Board. Claimant argued that the WCJ erred in placing the burden of proof on him. It was Employer's burden to show that Claimant had earnings sufficient to warrant a suspension. The Board affirmed, reasoning that the burden was properly placed on Claimant to supply Employer with documentary evidence of his self-employment. Claimant then petitioned for this Court's review.[11]

On appeal, Claimant, *pro se*, argues that his benefits were erroneously suspended because Employer did not prove the amount of Claimant's earning power. Claimant also argues that the WCJ's decision is not reasoned[12] and demonstrated a bias in favor of Employer.[13]

In his burden of proof issue, Claimant argues that Employer had to present evidence to support its position that Claimant had earnings from self-employment that surpassed his pre-injury wages. Because Employer did not do so, Claimant's benefits cannot be suspended. We disagree.

A claimant is entitled to disability compensation to the extent his work injury has negatively impacted his earning power. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 640 A.2d 386, 391 (Pa. 1994). Section 311.1 of the Workers' Compensation Act[14] (Act) requires a

---

[11] This Court's review of an adjudication of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[12] Claimant argued in his appeal to the Board that WCJ Bloom's decision was not sufficiently reasoned, but the Board did not specifically address that issue.

[13] We have rearranged the order of Claimant's arguments for organizational purposes.

[14] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. §631.1.

claimant who receives wages to report them to his employer within 30 days. 77 P.S. §631.1. In addition, the claimant "is obligated to cooperate with the insurer in an investigation of employment, self-employment, wages and physical condition." 77 P.S. §631.1(c). Specifically, Section 311.1 states, in relevant part, as follows:

> (a) If an employe files a petition seeking compensation under section 306(a) or (b) or is receiving compensation under section 306(a) or (b), the employe shall report, in writing, to the insurer the following:
>
>> (1) If the employe has become or is employed or self-employed in any capacity.
>>
>> (2) Any wages from such employment or self-employment.
>>
>> (3) The name and address of the employer.
>>
>> (4) The amount of wages from such employment or self-employment.
>>
>> (5) The dates of such employment or self-employment.
>>
>> (6) The nature and scope of such employment or self-employment.
>>
>> (7) Any other information which is relevant in determining the entitlement to or amount of compensation.
>
> (b) The report referred to in clause (a) must be made as soon as possible but no later than thirty days after such employment or self-employment occurs.
>
> (c) An employe is obligated to cooperate with the insurer in an investigation of employment, self-employment, wages and physical condition.

77 P.S. §631.1(a)-(c).

Section 311.1 places the burden on the claimant to report wage and employment information to his employer. Where a claimant, who has sole possession of the relevant earnings information, refuses to provide it, "a WCJ may properly suspend a claimant's benefits." *Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co. and Zurich Insurance Company)*, 782 A.2d 1077, 1085 (Pa. Cmwlth. 2001).

*Alessandro v. Workers' Compensation Appeal Board (Precision Metal Crafters, LLC)*, 972 A.2d 1245 (Pa. Cmwlth. 2009), is instructive. There, the claimant collected total disability compensation for an October 2005 work injury. Both before and after his injury, the claimant had also worked at Mike's Car Lot. The owner of Mike's Car Lot testified that he had paid the claimant in cash but kept no records of these transactions. The claimant's 2005 tax return showed income of $6,540 from side jobs, but his 2006 tax return reported no income from side jobs. The WCJ rejected the testimony of the claimant and the owner of Mike's Car Lot. Because the employer "had no means of obtaining information regarding Claimant's income," the WCJ suspended the claimant's benefits until such time as he documented his earnings with Mike's Car Lot. *Id.* at 1248. The claimant appealed, arguing that his 2005 tax return established the basis for a modification, not a suspension. He also argued that the Board had placed an impossible burden on him, *i.e.*, to produce non-existent documents. This Court affirmed the suspension, reasoning as follows:

> Claimant denied he worked for Mike's Car Lot subsequent to his work injury. [The owner] also denied that Claimant performed any work for him subsequent to October 2005. These individuals' testimony was rejected on this issue. Claimant's reported earnings in his 2005 tax return are not necessarily representative of what he is earning at the present time. Unfortunately, both Claimant and [the owner] stated that

12

> when payments are made, they are made in cash. There is no record of any transactions. Based on this factual scenario, the WCJ was left with no choice but to suspend Claimant's benefits.

*Id*. at 1253-54 (citing *Brehm*, 782 A.2d 1077).

Here, Claimant admitted that he was self-employed while receiving workers' compensation benefits. Employer sought a suspension because Claimant did not give Employer his earnings information, which was in Claimant's exclusive possession and control. The fact that Claimant did not keep adequate records of his earnings works against him, not Employer. The Board did not err in suspending Claimant's disability benefits.[15]

Claimant also argues that the WCJ did not follow the "true essence" of the Act, which is to protect the injured worker. The WCJ apparently formed his opinion about credibility without considering the totality of the evidence. For this reason, Claimant asserts that the WCJ's decision is not reasoned.

Section 422(a) of the Act requires the WCJ to issue a reasoned decision

> containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. §834.[16] A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review without further elucidation. *Daniels v. Workers'*

---

[15] Claimant insists that he cooperated with Employer's investigation by eventually turning over everything he had. Even if this is so, Claimant's recordkeeping for his business was seriously deficient. The law cannot excuse a claimant who does not have records of his wages because he failed to keep them or file any tax documents.

[16] Section 422(a) states in relevant part:

**(Footnote continued on the next page . . . )**

13

*Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

Claimant argues that the WCJ did not explain his finding that Claimant's testimony was "evasive, inconsistent and contrary to other evidence of record." WCJ Bloom Decision, March 27, 2014, at 14; Finding of Fact No. 39. Claimant also asserts that the WCJ should not have placed so much emphasis on the deposits shown in the bank records, which led the WCJ to conclude that Claimant was engaged in gainful employment. In actuality, he was not employed.

Claimant offered documents from the Social Security Administration and Pennsylvania Department of Public Welfare relating to his eligibility for Medicare and welfare. Claimant's Exhibits 16, 17 and 18. Claimant contends these agencies found Claimant had no income because he has been totally disabled since May 21, 2004, and the WCJ erred by not considering this information.[17] Claimant also argues that the WCJ failed to consider the "overwhelming amount of medical evidence and physician testimony." Claimant's Brief at 18.

---

**(continued . . . )**

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

[17] Notably, Claimant does not argue that these determinations would be binding in any way on the workers' compensation authorities.

14

The WCJ authored a 19-page decision with 42 findings of fact. The WCJ meticulously summarized the evidence of record, which Claimant's own counsel described as "relatively voluminous." N.T., January 8, 2014, at 11. In rejecting Claimant's testimony, the WCJ explained at length why he found it to be "evasive, inconsistent and contrary to other evidence of record." The WCJ pointed out that Claimant's bank records did not correlate with Claimant's disability compensation or his testimony about his income during the relevant time periods. Claimant argues that there are "logical explanations" for any discrepancy. Claimant's Brief at 46. However, it was Claimant's responsibility to provide these explanations to the WCJ, and he did not do so. The WCJ alone is the finder of fact and has the power to make credibility determinations; this Court may not disturb them. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000).

Claimant's reliance on the documents from the Social Security Administration and Department of Public Welfare is misplaced. The WCJ noted that they reflect the earnings reported by Claimant but not his earnings in 2004 and 2009. Thus, they are not relevant to the issue in this case, *i.e.*, documentation of Claimant's self-employment.

Likewise, Claimant argues that the WCJ ignored an "overwhelming amount of medical evidence and physician testimony." Claimant's Brief at 18. Claimant submitted one medical report, which the WCJ noted, but it was not relevant. Section 422(a) requires the WCJ to make findings necessary to resolve the issues raised by the evidence. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Company)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006). Claimant himself said he was self-employed. The suspension litigation

15

was about Claimant's self-employment. The WCJ rendered all necessary findings on this issue and explained the rationale for his decision, allowing for adequate appellate review. This fulfilled the Act's reasoned decision requirement.

Claimant further argues that his "largest quarrel" with the suspension is that WCJ Bloom seemed to be prejudiced against him. Claimant's Brief at 21. However, Claimant did not raise bias before the WCJ or in his appeal to the Board. The "law is well settled that issues not raised before the Board are waived and cannot be raised for the first time before this Court." *Myers v. Workers' Compensation Appeal Board (Family Heritage Restaurant)*, 728 A.2d 1021, 1023 (Pa. Cmwlth. 1999). In any case, our review of the record shows that WCJ Bloom conducted the proceedings in a professional and impartial manner, giving Claimant numerous extensions of time to retain an attorney and to submit his evidence. Pointing out WCJ Bloom's reasons for his adverse credibility determination is not evidence of bias.[18]

In sum, because Claimant stated he was engaged in self-employment projects but did not provide Employer with adequate information to ascertain his

---

[18] Claimant also argues that Employer should not be permitted to take the position it did in the instant litigation, *i.e.*, that Claimant was working, because it is diametrically opposed to Employer's position in the prior litigation, *i.e.*, that Claimant had voluntarily withdrawn from the workforce. This issue was not raised before the Board and is waived. At any rate, during the prior litigation, Employer did not know Claimant was working. After finding out about the self-employment from Claimant himself, Employer properly pursued a suspension.

Claimant also argues that the WCJ misstated Claimant's testimony and made numerous unfair statements in several of his findings of fact. Claimant believes the Board should have pointed out these flaws in the WCJ's decision. Again, these issues were not presented to the Board and are waived. At any rate, slight deviations between the testimony and summary are inconsequential. Claimant disagrees with the WCJ's interpretation of the evidence, but the WCJ is solely responsible for the weight to be assigned the evidence and rendering findings of fact.

16

earnings, the Board did not err in suspending Claimant's disability benefits. Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Marinack,               :
        Petitioner       :
                      :
       v.            :   No. 871 C.D. 2015
                      :
Workers' Compensation Appeal   :
Board (City of Pittsburgh Fire Bureau),  :
        Respondent    :

**ORDER**

AND NOW, this 19th day of February, 2016, the order of the Workers' Compensation Appeal Board dated March 24, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge