**Josue BONEGRE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BERTOLINI'S), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 22, 2004.

Decided Dec. 6, 2004.

Josue Bonegre, petitioner, pro se.

Marta J. Guhl, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Josue Bonegre (Claimant) petitions, *pro se*, for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) denying his claim petition.

On appeal [1] Claimant contends that even though his own testimony and that of his medical expert was not found credible, "the rest of the evidence must be evaluated." (Claimant's Brief, p. 11). He also

---

1. In its brief, Bertolini's Restaurant (Employer) asks us to dismiss the appeal because Claimant did not serve Employer's counsel with a copy of the petition for review. After learning of the filing, Employer could have filed a motion to compel service or a motion to quash, but did not do so. Instead, it filed its brief on the merits and placed this issue before the Court as an argument. Although we understand that rules pertaining to service should not be lightly disregarded, we conclude that, in this case, any injury to Employer was minimal because it was served with the brief, it did file a response brief and an appellate petition for review does not require a responsive pleading. Thus, we decline to dismiss the appeal.

asserts that the WCJ improperly relied on hearsay evidence and failed to draw an adverse inference from Employer's decision not to call certain employees as witnesses.

The record indicates that Claimant filed his claim petition on February 4, 2002, asserting that he had sustained an injury to his low back and mid back on November 21, 2001 due to "repetitive bending and lifting." (Claim Petition). Employer filed an answer, denying the allegations and also filed a Petition for a Physical Examination, which the WCJ granted.[2]

Claimant testified at the hearing that he was employed as a line cook and that he injured his back on November 21, 2001, when he slipped while carrying a bucket of salad dressing from the cooler. He asserted that he informed one of his supervisors, Executive Chef Leroy Sam, of his injury. After the alleged accident, Claimant continued to work and did not seek medical treatment. The restaurant was closed for business the following day. Claimant was scheduled to work November 23–25, but did not report. He testified that he called each day and left a message with a different co-employee. On November 26th Claimant went to work to pick up his check and was fired for failing to report for work. After learning of his termination, Claimant immediately sought medical treatment for his alleged November 21st work injury from Dr. Yves Jerome.

Claimant presented the testimony of Dr. Yves Jerome, who stated that, although he had been Claimant's family physician for more than ten years, he never treated Claimant for a back injury prior to November 26, 2001. He further stated that his examination, conducted on that date, "revealed tenderness in the left shoulder and problems with abduction, interior rotation and exterior rotation." (WCJ's Finding of Fact (FOF) 2b.) He also noted "upper lumbar spine tenderness at the paraspinal muscle and tenderness at the trapezius muscle insertion." *Id.* He initially diagnosed Claimant with "thoracic-lumbar sprain and strain, trapezius muscle myofascitis, lumbosacral sprain and strain, and sprain and strain of the left shoulder." *Id.* He referred Claimant for physical therapy, but also continued to see Claimant himself. On cross-examination, counsel for Employer elicited that Dr. Jerome's records for November 26th also indicated that Claimant went to New York for a family emergency on November 21st and did not return to Philadelphia until November 26th.

In his December 3, 2001 examination, Dr. Jerome noted that Claimant had "leg pain anterior, posterior, medial, and lateral, bilaterally" when performing straight leg tests. (FOF 2d.) Dr. Jerome concluded at that time that Claimant had a loose disc, which was exerting pressure and causing pain in various parts of Claimant's back.

Claimant's physiatrist, to whom Dr. Jerome had referred him, ordered an EMG, which was conducted in March 2002. Dr. Jerome reviewed the test result and opined that the test indicated that Claimant had radiculopathy. In addition, Dr. Jerome ordered an MRI, which was conducted in June 2002, and revealed that Claimant had a "small central disc herniation, slightly extruded in the posterior aspect of S1 and a central disc herniation at L5–S1." (FOF 2c.) Dr. Jerome last saw Claimant on September 13, 2002, five days

---

2. At the hearing, in addition to testifying regarding his alleged slip on November 21st, Claimant further stated that he had also injured his back in two previous work incidents. He testified that he had never sought medical treatment or any work accommodations for either of them.

before the doctor was deposed. At the deposition, Dr. Jerome opined that Claimant suffered from sprain and strain of the lumbosacral region and disc herniation at L5–S1. (FOF 2e.) He further opined that Claimant's condition was work-related and that he could not return to his pre-injury job. *Id.*

Employer presented the deposition of Dr. Anthony Puglisi, who examined Claimant on June 12, 2002, after Employer's Petition for a Physical Examination was granted. Dr. Puglisi's examination revealed normal flexibility and range of motion. He testified in his November 2002 deposition that he had reviewed the June 17, 2002 MRI and then opined that it revealed a "congenital abnormality and a large bulge secondary to an overlap, but not a disc herniation because there was no nerve root affected." (FOF 3c.) He also determined that, while a nerve conduction study showed other abnormalities, they were not near the thigh and, therefore, not suggestive of radiculopathy. *Id.* He further opined that the "symptoms are systemic because so many nerves are involved, which means that these could be symptoms of diabetes, thyroid problems or neurologic[al] problems." *Id.* Dr. Puglisi also reviewed Dr. Jerome's September 2002 deposition, and stated that Claimant was experiencing symptoms for such a long period of time that it is unlikely they would have subsided by the time Dr. Puglisi saw Claimant in June 2002. (FOF 3d.) He concluded that Claimant did not have a significant back injury and opined that he could return to his pre-injury position. *Id.*

Employer also presented the testimony of Chef Sam, who stated that he fills out a report any time an employee suffers a work injury and that he never filled out a

form for Claimant because Claimant never reported any work injury. He further stated that he did not recall ever hearing Claimant complain at work of any back injury and that no other employee ever told him that Claimant had mentioned a work injury.

Finally, Employer presented the testimony of its General Manager, Stephen Kislow, to whom Claimant reported his work injury on January 2, 2002, nearly six weeks after the alleged injury and five weeks after he was terminated from his position. This witness stated that he keeps records of all injury reports and received none for Claimant. He also stated that none of the restaurant's hostesses remember receiving a call from Claimant after his alleged injury indicating either that he was injured or that he was unable to report for work. Last, Kislow testified that he terminated Claimant due to his unauthorized absences.

The WCJ found that Claimant's testimony lacked "credibility and persuasiveness" and rejected it in its entirety because Claimant failed to report his injury and failed to seek medical treatment for it until after he was fired. He also found that Claimant did not call off work on November 23–25 and that Employer's witnesses were more persuasive than Claimant because they provided clear testimony regarding procedures both for reporting off work and for reporting work injuries and because Claimant was in New York City[3] during this time period.

The WCJ resolved the conflicting medical evidence in favor of Employer's expert, Dr. Puglisi, because he found that Dr. Jerome's diagnosis of a herniated disc was not supported by the test results. In addition, the WCJ specifically rejected the tes-

---

3. In fact, the testimony and doctor's note indicate that Claimant went to New York; neither place in the record indicates specifically that he went to New York *City*.

timony of Dr. Jerome in its entirety as not credible or persuasive because it was premised on Claimant's account of the alleged work injury, which the WCJ found not credible.

■ Concluding that Claimant failed to meet his burden to prove a work-related injury, the WCJ denied the claim petition. On appeal the Board affirmed. Claimant then appealed to this Court.[4]

■ Claimant first asserts that the WCJ could not merely reject his testimony and that of his medical expert, but had to consider the record as a whole. We note initially that, in a claim petition proceeding, *the claimant* bears the burden of proving that he suffered an injury while in the course and scope of his employment and that he remains disabled due to that injury. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). Thus, Employer, here, was not under any obligation to present *any* evidence. However, it did so and it is clear that the WCJ did consider and evaluate all of the evidence. His findings reference the evidence of all witnesses and, not only did he specifically resolve the credibility conflicts, but also provided express reasons for resolving them as he did. We note that it is solely the role of the WCJ to assess credibility and resolve conflicts in the evidence. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa. Cmwlth.1998). Further, he, alone, determines the weight of the evidence and as such, may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* Thus, to the extent Claimant suggests that the WCJ's decision and the Board's subsequent appellate review thereof were deficient because of an alleged failure to consider all of the evidence, we reject such a notion.

■ Claimant next asserts that it was erroneous for the WCJ to rely on Sam's and Kislow's statements that no other employee reported to them that Claimant had mentioned an injury. Claimant suggests that this constituted an improper reliance on hearsay testimony. Hearsay is an out of court statement made to prove the truth of the matter asserted. *Crouse v. Workmen's Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 165 Pa.Cmwlth.233, 645 A.2d 310 (1994). Here, Sam's and Kislow's statements were not made to prove that Claimant was not injured at work, but merely to show that no one heard that he was injured at work. Thus, they do not constitute hearsay.

■ Finally, Claimant contends that because Employer failed to call as witnesses the hostesses and sous chef, to whom he allegedly reported his injury when he called off on November 23–25, the WCJ should have drawn an adverse inference that their testimony would not have been favorable to Employer. Initially, we note that "a negative inference is generally made against the party with the burden of proof; where a party has no burden to meet or is satisfied that the opposing party has not met its burden of proof, an adverse inference may not be drawn for failure to produce evidence." *Fine v. Department of*

4. Our review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991).

*Transportation, Bureau of Driver Licensing*, 694 A.2d 364, 368 n. 9 (Pa.Cmwlth. 1997). Thus, there is doubt that the rule is even applicable against an employer in a situation such as this one, where the claimant failed to meet his burden of proof in a claim petition. However, even assuming that the rule could apply against the party who does not bear the burden of proof, we conclude that it would not apply in this case.

The adverse inference rule only applies in cases where an uncalled witness is "peculiarly within the reach and knowledge of only one of the parties." *Allingham v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 659 A.2d 49, 53 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 543 Pa. 717, 672 A.2d 310 (1996) (citing *Bentivoglio v. Ralston*, 447 Pa. 24, 29, 288 A.2d 745, 748 (1972)).[5] Claimant asserts that the purported witnesses were peculiarly within the reach and knowledge of Employer because they were its employees. However, "the [adverse] inference [rule] will not necessarily be appropriate ... merely because a party fails to call an employee who has special knowledge of relevant facts, although that relationship may be a factor." Packel and Poulin, § 427–3 Pennsylvania Evidence (1999).

Although we have found no cases in the workers' compensation setting that have considered whether an employee is peculiarly within the reach and knowledge of an employer, merely by virtue of his status as an employee, we do find illustrative *PNC Bank Corporation v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269 (Pa.Cmwlth.2003). There, the question was whether the claimant, who had filed a fatal claim petition, was the common law husband of the decedent. The WCJ concluded that he was and the Board affirmed. On appeal to this Court, the employer argued that the WCJ should have drawn an adverse inference because the claimant had failed to present the testimony of the decedent's children regarding the marital status of their mother. The employer asserted that the children would have been within the control of the claimant because they were members of his extended family, giving him access and influence to their testimony. *Id.* at 1285. We disagreed and stated that, "Employer does not contend ... that it lacked knowledge of [the purported wife's] children prior to the litigation or could not call them itself. Furthermore, there is no evidence that the [purported wife's] children were peculiarly within the reach of [the claimant] only." *Id.*

Similarly, here, Claimant does not contend that he lacked knowledge of the co-workers' possibly relevant testimony, nor is there anything in the record to support the bare assertion in his brief that those potential witnesses were peculiarly within the reach of Employer. Therefore, we conclude that the adverse rule is inapplicable to his case.[6] *Accord Adonizio Brothers, Inc. v. Department of Transportation*

---

5. Even assuming that the rule does apply, the WCJ is *permitted*, but not required, to draw the adverse inference. *Id.; see also Coombs v. Workmen's Compensation Appeal Board (Philadelphia Electric Company)*, 689 A.2d 996, 998 (Pa.Cmwlth.1997) (quoting Wigmore on Evidence § 285 that the "non production of evidence ... *permits* the inference that its tenor is unfavorable to the party's case") (emphasis added in part and deleted in part).

6. Claimant also seeks to distinguish his case from, *inter alia, Allingham*, because the purported witnesses are factual ones, rather than medical experts. He asserts that the adverse inference should be allowed, apparently *carte blanche*, where the witnesses are factual ones. However, *PNC* involved purported fact witnesses and the Court gave no indication that the rule was inapplicable on this basis.

*Board of Review,* 108 Pa.Cmwlth. 25, 529 A.2d 59, 61 (1987), *petition for allowance of appeal denied,* 518 Pa. 627, 541 A.2d 1138 (1988) (no adverse inference could be drawn from the Department of Transportation's failure to call two of its employees as witnesses because they could have been called by the other party, a public contractor whose bidding privileges had been suspended).

Because we conclude that 1) the evidence supports the denial of the claim petition, 2) the WCJ did not impermissibly rely on hearsay, and 3) the WCJ and Board did not improperly refuse to apply the adverse inference rule, we affirm the Board's order.

Senior Judge Flaherty concurs in the result only.

### ORDER

**NOW,** December 6, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.