Billi Jorgenson,               :
             Petitioner     :
                        :
       v.                    :
                        :
Workers' Compensation Appeal    :
Board (PNC Financial Services     :
Group, Inc.),                :   No. 1345 C.D. 2016
             Respondent   :   Submitted: December 23, 2016

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                  FILED: May 17, 2017

Billi Jorgenson (Claimant) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) July 12, 2016 order affirming the Workers' Compensation Judge's (WCJ) decision denying Claimant's claim petition (Petition). Claimant presents two issues for this Court's review: (1) whether the WCJ erred by weighing the non-work-related factors against the work-related factors, as opposed to the record as a whole; and (2) whether the WCJ's conclusion was based on substantial, competent, record evidence. After review, we affirm.

Claimant was employed by PNC Financial Services Group, Inc. (Employer) as a full-time healthcare business banker. Outside of work, Claimant rides horses and competes in barrel racing. Claimant sustained two concussions in three days while engaged in horse-related activities. The first occurred on April 1, 2013, when she did not realize that the hitch was hanging down from a gooseneck

trailer and turned into it, hitting her left temple. On April 3, 2013, a horse's knee struck Claimant in the same spot as she wrapped his leg. On May 8, 2013, Claimant's treating physician, Eric S. Bohn, D.O. (Dr. Bohn) recommended she take a leave of absence from work. Claimant was released to full-duty work on Wednesday, July 3, 2013. She was off the next day, but went to work on Friday.

On July 5, 2013, Claimant was tired and her eyes were bothering her by the end of the day. Claimant had difficulty the following week and left early one day due to a headache. On July 22, 2013, Claimant experienced numbness and tingling on the left side of her face, her head hurt and she was very nauseous. She was unable to recognize the work on her desk or recall the names of other workers. Claimant called her doctor and immediately went to his office. She has not been released to return to work since that day.

On February 7, 2014, Claimant filed the Petition alleging a work-related injury in the nature of aggravation or re-activation of post-concussion syndrome, severe vestibular dysfunction, visual and oculomotor dysfunction, cognitive dysfunction and mild exacerbation of depressive disorder. Claimant further alleged full disability from July 22, 2013 and ongoing. Employer filed an answer denying Claimant's material averments. The WCJ held hearings on March 10, April 25, September 24 and December 22, 2014, and February 2, 2015. On October 6, 2015, the WCJ denied the Petition. Claimant appealed to the Board. On July 12, 2016, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[1]

---

[1] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

Claimant first argues that because work-related factors contributed to Claimant's ongoing condition, as a matter of law, the Petition should be granted. Specifically,

> [t]he basis of [Claimant's] argument as set forth in Issue I . . . is that the WCJ attempted to weigh all of the testimony in this case and choose between non-work related causes for [Claimant's] injuries against un[]contradicted testimony giving work[-]related aggravations for her ongoing injury and then attempt to make a decision.

Claimant Br. at 11 (emphasis omitted).  We disagree.

Initially, "in a claim petition proceeding, *the claimant* bears the burden of proving that [s]he suffered an injury while in the course and scope of h[er] employment and that [s]he remains disabled due to that injury." *Bonegre v. Workers' Comp. Appeal Bd. (Bertolini's),* 863 A.2d 68, 72 (Pa. Cmwlth. 2004).  "When there is no obvious causal connection between an injury and the alleged work-related cause, unequivocal medical evidence is necessary to establish that connection." *Boddie v. Workers' Comp. Appeal Bd. (Crown Distribution Ctr.),* 125 A.3d 84, 89 (Pa. Cmwlth. 2015).  "[I]n determining whether medical evidence is unequivocal and therefore competent to support a factual determination, we review the testimony as a whole and do not base our analysis on a few words taken out of context." *Hutz v. Workers' Comp. Appeal Bd. (City of Phila.),* 147 A.3d 35, 56 (Pa. Cmwlth. 2016).

Claimant maintains that "[t]he WCJ **accepted** that Dr. Bohn testified to both [Claimant's] work being a contributing factor to her continued concussion syndromes and that [Claimant's] horse racing also exacerbated [Claimant's] concussion syndromes.  (See [WCJ Dec. at] both Paragraph 31 and Paragraph 41, **which is confusing**)."  Claimant Br. at 11 (emphasis added).

In Paragraph 31, the WCJ merely summarized Dr. Bohn's "October 1, 2014 deposition" testimony.  WCJ Dec. at 16.  In Paragraph 41, however, **the WCJ**

3

**expressly rejected Dr. Bohn's opinion** that Claimant's return to work aggravated or was a substantial or significant factor in the aggravation of Claimant's concussion syndrome and explained her reasons therefor. The WCJ stated:

> **This [WCJ] does not find Dr. Bohn's testimony and opinion that [Claimant's] return to work at [Employer] as a [h]ealthcare [b]usiness [b]anker aggravated or was a substantial or significant factor in the aggravation of her pre-existing concussive syndrome to be credible or persuasive.** Dr. Bohn has provided multiple opinions on the causation of [Claimant's] inability to return to work after July 22, 2013. By his own admission, his records or reports attributed the exacerbation to [Claimant's], symptoms to her riding of a spirited horse in a barrel race on July 21, 2013, from July 22, 2013 through August 2013. His March 4, 2014, report contained statements regarding the effect of [Claimant's] July 21, 2013, barrel racing that were inconsistent with his own office records. In his report, he described [Claimant] as having an uneventful ride on her horse on July 22, 2013. But, in his office note of July 22, 2013, he attributed her exacerbation of her concussive-type symptoms to the ballistic activity of her horse during the July 21, 2013, barrel racing. Dr. Bohn could not explain why he attributed the recurrence of [Claimant's] symptoms to riding the horse during the barrel racing in his July 22, 2013, office note and to the work in his March 4, 2014, report. He continued to relate the exacerbation of her symptoms to her work during his October 1, 2014, deposition testimony. Dr. Bohn in his first deposition only admitted that it was possible that [Claimant's] riding of a horse during the barrel racing could have aggravated her post-concussive symptoms. He continued to relate [Claimant's] exacerbation of symptoms to her return to work in his January 27, 2015, report provided for [Claimant's] Social Security Disability Claim. Dr. Bohn only began relating [Claimant's] symptoms to a combination of her riding in barrel race and her return to work from July 3, 2013, through and including July 22, 2013, in his February 10, 2015, report. His testimony in the April 8, 2015, deposition about the extent that her return to work in July 2013, contributed to the exacerbation varied from a substantial contributing factor to a significant contributing factor. In addition, his testimony as to whether

[Claimant] was or was not riding horses in the barrel racing against medical advice was not consistent in his April 8, 2015, deposition.

WCJ Dec. at 21-22 (emphasis added).

Further, **the WCJ explicitly accepted Employer's medical expert witness, Richard B. Kasdan, M.D.'s (Dr. Kasdan), opinion** that Claimant did not aggravate or exacerbate her concussion syndrome at work and explained her reasons therefor. In Paragraph 42, the WCJ opined:

> **Dr. Kasdan's opinion, that** [**Claimant**] **did not sustain a concussion or an aggravation or exacerbation of her pre-existing concussion symptoms at work, is credible and persuasive**. He provided a [sic] consistent testimony in his deposition. In addition, he provided a basis for his opinion that [Claimant] did not sustain a concussion or an aggravation or exacerbation of her pre-existing concussion symptoms at work.

WCJ Dec. at 22 (emphasis added).

Because Claimant had the burden of proving that she suffered an injury while in the course and scope of her employment and that she remains disabled due to that injury,

> Employer, here, was not under any obligation to present *any* evidence. However, it did so and it is clear that the WCJ did consider and evaluate all of the evidence. H[er] findings reference the evidence of all witnesses[2] and, not only did [s]he specifically resolve the credibility conflicts, but also provided express reasons for resolving them as [s]he did.[3] We note that **it is solely the role of the WCJ to assess credibility and resolve conflicts in the evidence. Further, [s]he, alone, determines the weight of the evidence and as such, may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted**. Thus, to the extent Claimant suggests that the WCJ's decision and the Board's subsequent appellate

[2] *See* WCJ Dec. at 5-21.
[3] *See* WCJ Dec. at 21-22.

5

review thereof were deficient because of an alleged failure to consider all of the evidence, we reject such a notion.

*Bonegre,* 863 A.2d at 72 (citations omitted; emphasis added).

The WCJ did not merely weigh the work-related causes and the non-work-related causes for Claimant's aggravation and exacerbation of her concussion syndrome. Rather, the WCJ "assess[ed] credibility and resolve[d] conflicts in the evidence. Further, [s]he, [] determine[d] the weight of the evidence and as such, [] reject[ed] the testimony of [] [Claimant's] witness[es] in whole [and] in part, even testimony [that was] uncontradicted[,]" which was within her province. *Id.* Accordingly, we discern no error in the WCJ's weighing of the evidence.

Claimant next argues that the WCJ's conclusion was not based on substantial, competent, record evidence. Particularly, Claimant contends:

> In reading the medical testimony as a whole and in reading the WCJ's opinion, it is absolutely clear that Dr. Bohn . . . attributed [Claimant's] inability to work due to concussion syndromes to both her work activities and her non-work related riding horses. The WCJ committed an [e]rror of [l]aw in not considering both combined and opting to pick one or the other.

Claimant Br. at 17 (emphasis omitted). We disagree.

Neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). This Court has stated:

> '[**I**]**t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ**; the critical inquiry is whether there is evidence to support the findings actually made.' [*Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005)] (quoting [*Del. Cnty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles),* 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record

6

contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (citation omitted; emphasis added).

> 'In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder.' [*Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003)]. 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' *Id.*

*3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007).

Here, Dr. Kasdan related that he evaluated Claimant on May 6, 2014 and reviewed her medical records, legal records and Claimant's history as reported by Claimant. *See* Reproduced Record (R.R.) at 438a. As a result thereof, Dr. Kasdan testified:

> Q. [Employer's Counsel] Doctor, do you have an opinion as to any event that may have caused this aggravation?
>
> A. [Dr. Kasdan] At the workplace are you asking[4]?
>
> Q. No, at all.
>
> A. Well, it has been -- the record is clear that these concussion experts that she has been seeing have opined certainly before she stopped working on the 22nd that there were numerous traumatic injuries to her head while riding a horse, and they blamed it on that. Subsequently, the record would show that an opinion letter by Dr. Bohn stated that she had all that but it was the pressures of work that led her to not work, that aggravated that condition.

---

[4] Dr. Kasdan is referring to "July 22nd, [the day Claimant] stopped working. So in [Claimant's] mind, that day was the day that triggered everything." R.R. at 443a.

That is not my opinion. I disagree with it. And think there's evidence to say that I'm not even sure that Dr. Bohn believes that, but he did state that in that first [March 4, 2014] opinion.

R.R. at 443a. Dr. Kasdan further reported:

Q. Now, Doctor, I want to step back and go through some of this a little bit.

You're aware of her concussion history, correct?

A. I am.

Q. Pre-existing July 22, 2013?

A. Yes, sir.

Q. Doctor, is there any history that you have seen in which [Claimant] stated there was a concussion at work?

A. No.

Q. Is there any indication in any of the records or in [Claimant's] evaluation which she said that she struck her head at work?

A. No.

Q. Based on a review of your records that you were provided, was [Claimant] fully recovered from the concussion she had sustained in April of 2013 prior to July 22, 2013, meaning was she still under the post[-]concussive syndrome?

A. Well, again, I did not see her, I will confess to that, at that time; but the way the system works is she has a complaint, I'm trying to give you objective data to help correlate this event.

Certainly her treating physicians felt that she had problems but I believe on July 1st he originally, this is [Dr.] Bohn, opined that she was recovered and could go back to work. So if you want to say is that [sic] a reason that she was recovered and go back to work, her treating physician felt that way.

8

Q. However, in the records, she was still having problems even in between then, correct?

A. She was.

Q. **So even before July 22nd, she was still having problems from the original concussions**?

A. **Absolutely**, and she was treating not only with [Dr.] Bohn but he had some optometrist who gives them prisms and tells them they have convergence insufficiency. So yes, there was active treatment.

Q. **Doctor, in reviewing all of the records and speaking with [Claimant], is there anything that you're aware of that could have physiologically changed something in her brain on July 22[], 2013**?

A. **Absolutely not**.

R.R. at 445a-446a (emphasis added). Moreover, after a discussion concerning Claimant's July 21, 2013 horse race, Dr. Kasdan stated:

Q. Now, Doctor, going through Dr. Bohn's record there and discussing what we have discussed so far, do you have an opinion as to whether between the horse race on July 21 and going to work on July 22nd . . . which one caused any aggravation in her concussion symptoms?

A. Well, I would say the major substantial factor in causing the symptoms were the horse race, the events of the 21st.

R.R. at 449a. Finally, Dr. Kasdan opined:

Q. Did [Claimant's] employment cause a concussion?

A. It did not.

Q. Did [Claimant's] employment cause an aggravation or exacerbation of any pre-existing concussion syndrome?

A. No.

Q. If there is an aggravation or exacerbation of [Claimant's] pre-existing concussion symptoms, when did that occur?

A. July 21st, 2013.

9

Q. And what was on July 21, 2013?

A. A spirited [horse] barrel race.

. . . .

Q. Doctor, is there any indication in that history that her symptoms abated and then returned the next morning at work?

A. No. He basically says they returned after the race, which would imply that they continued thereafter.

Q. Doctor, in your practice, when symptoms abate, do your patients usually tell you about that?

A. Yes.

. . . .

Q. Doctor, have your opinions today been given within a reasonable degree of medical certainty?

A. Yes[.]

R.R. at 460a-462a. Viewing the evidence in a light most favorable to the Employer, as we must, and drawing all reasonable inferences therefrom, we hold that Dr. Kasdan's testimony is substantial, competent, record evidence which supports the WCJ's conclusion.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

10

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Billi Jorgenson,             :
               Petitioner    :
                        :
        v.                    :
                        :
Workers' Compensation Appeal  :
Board (PNC Financial Services   :
Group, Inc.),             :   No. 1345 C.D. 2016
             Respondent  :

## O R D E R

AND NOW, this 17th day of May, 2017, the Workers' Compensation Appeal Board's July 12, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge