# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas Gerald Kunkle,        :
           Petitioner     :
                             :
         v.                  :     No. 1556 C.D. 2019
                             :     Submitted: June 19, 2020
Unemployment Compensation    :
Board of Review,               :
           Respondent    :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED: December 7, 2020**

Petitioner Douglas Gerald Kunkle (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed a decision of an Unemployment Compensation Referee (Referee), in which the Referee concluded that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to discharge for willful misconduct. For the reasons set forth below, we affirm the order of the Board.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

# I. BACKGROUND

Claimant applied for unemployment compensation benefits on May 16, 2019, after separating from his part-time position as a Package Handler with FedEx Ground Package System (Employer). (Certified Record (C.R.), Item No. 2.) The Altoona UC Service Center (Service Center) determined that Claimant was eligible for unemployment compensation benefits for the waiting week ending May 18, 2019. (C.R., Item No. 5 at 1.) Employer appealed the Service Center's determination, and a Referee conducted a hearing. (C.R., Item Nos. 6, 10.) Both Claimant and Employer's representative, Ryan Remaly (Remaly), testified at the hearing. (C.R., Item No. 10.)

Remaly testified that Claimant worked for Employer from March 18, 2019, to May 14, 2019. (*Id.* at 5-6.) During Claimant's employment, Remaly worked at the same facility as Claimant as a Safety Focused Operations Manager. (*See id.* at 7-8.) One of Remaly's roles was to document the names of employees arriving late for work. (*Id.* at 7-9.) Employer's tardiness policy provided a three-minute grace period, after which employees were considered tardy and their delay was recorded and provided to upper management. (*Id.*) Remaly stationed himself in the guard shack at the beginning of shifts where employees entered the premises, and, when a tardy employee arrived, he would note the time and ask the tardy employee for his/her badge to document the employee's name. (*Id.*) Remaly testified that on May 14, 2019, Claimant entered the guard shack at 10:42 p.m. for his 10:30 p.m. shift. (*Id.* at 7.) When Remaly asked for Claimant's badge, Claimant refused and started out of the guard shack toward the larger FedEx building where he worked. (*Id.* at 8.) Remaly again asked Claimant for his badge, to which Claimant responded: "No, [expletive] you." (*Id.*) Remaly then grabbed Claimant's badge and ordered him to leave the premises, which Claimant did. (*Id.*) Remaly stated that Employer's Human Resources office later notified Claimant that Claimant was fired as a result

of the incident. (*Id.* at 10.) Remaly noted that Employer's policy on acceptable employee conduct was posted on the front board of the building in which Claimant worked. (*Id.* at 11.) The policy includes discipline up to and including termination for insubordination and comments, communication, and representations that may be viewed as threatening, violent, intimidating, or malicious. (*Id.* at 10-11; C.R., Item No. 6 at 5.)

Claimant similarly testified that he arrived at 10:42 p.m. for his 10:30 p.m. shift on the day of the incident. (C.R., Item No. 10 at 15.) After Remaly stopped Claimant at the guard shack and demanded his badge, Claimant responded that he was going to punch in and come back so they could discuss the situation further. (*Id*. at 17.) Remaly asked Claimant where he was going to punch in, to which Claimant responded: "[W]here the [expletive] do you think I am going to punch in at?" (*Id*.) After Remaly demanded Claimant's badge a second time, Claimant responded: "[N]o, [expletive] you." (*Id*. at 19.) Remaly then grabbed Claimant's badge from his hand and told him: "[Y]ou're fired." (*Id*. at 17-18.) Claimant testified that he was under the assumption that Remaly had no authority as Safety Focused Operations Manager to demand his badge or record the tardiness of an employee. (*Id*. at 19-20.) Alternatively, Claimant believed he was being hazed and that Remaly was attempting to embarrass him in front of the security guards and other employees. (*Id.* at 17, 21.)

As to Remaly's managerial authority, Claimant testified that two weeks before the incident in question, after Claimant arrived late to work and Remaly asked for his badge, Claimant emailed a manager to determine whether Remaly had authority as Safety Focused Operations Manager to record employees' tardiness and demand to see employees' badges. (*Id.* at 14, 19-20.) Claimant did not get a response to his email, and he did not follow up with upper management or question Remaly directly about his authority. (*Id*. at 14, 20-23.) Claimant introduced into evidence an email

3

chain between several of Employer's managers that Remaly was not a part of, he noted that Remaly was not listed as a manager on Employer's website, and he claimed that Remaly was not present at a managers' meeting he attended. (*Id.* at 21-23.) Claimant disputed Remaly's testimony that Employer's policy on acceptable conduct was available for review, and he stated that the employee handbook he received was missing pages and/or out of date. (*Id.* at 12-13.) Claimant noted, however, that he was aware that Employer had an active policy concerning acceptable employee conduct and that insubordination and comments and communications that are threatening, violent, intimidating, or malicious could potentially lead to termination. (*See id.*; C.R., Item No. 6 at 5.)

On rebuttal, Remaly confirmed that he is in fact a manager and that he was given specific instructions and authority to document the names of employees who were more than three minutes late and to report that information to upper management. (*Id.* at 29.) Remaly walked back his earlier testimony that Claimant was ultimately fired by Human Resources and stated that it was likely that he fired Claimant on the spot. (*Id.* at 30.) Remaly stated, however, that terminating employees was within his authority as a manager. (*Id.*) Finally, Remaly testified that he had in the past called his manager to provide an explanation of his role to other employees who questioned his authority in this regard. (*Id.*) Had Claimant requested that Remaly corroborate his management position and authority, he stated he would have done so. (*Id.*)

Following the hearing, the Referee issued a decision, concluding that Claimant was ineligible for unemployment compensation benefits under Section 402(e) of the Law, relating to termination for willful misconduct. (C.R., Item No. 11.) The Referee issued the following findings of fact:

4

1. The claimant was employed part-time as a Package Handler with FedEx Ground Package System . . . . The claimant was employed from March 18, 2019[,] to May 14, 2019, his last day worked.

2. The employer possesses a policy that provides that employees may be terminated for engaging in insubordination or the refusal to follow work instructions, for which the claimant was or should have been aware.

3. The employer possesses a policy that provides that employees may be terminated for engaging in behavior that is threatening, violent, malicious, or grossly obscene that may constitute bullying or harassment, for which the claimant should have been aware.

4. The Safety Focused Operations Manager was assigned by the employer to record the badge information of employees that arrived after the three-minute grace period of their scheduled work shift.

5. On April 30, 2019, the claimant sent an email to an employer's manager, John Perazetti, asking for an explanation because it was in his opinion not protocol for the "safety manager" to demand his badge when the claimant arrived late for work.

6. The claimant did not receive a response from Mr. Perazetti or any other manager regarding his inquiry.

7. On May 14, 2019, the claimant arrived at work approximately 12 minutes after the start of his work shift.

8. As the claimant entered the guard shack, the Safety Focused Operations Manager directed the claimant to show his badge to be recorded due to the claimant's tardiness.

9. The claimant stated, "let me punch in and then we'll discuss it" and proceeded to the FedEx building.

10. The Safety Focused Operations Manager asked the claimant where he intended to punch in for the day.

11. The claimant responded by stating, "Where the [expletive] do you think I'm going to punch in?"[]

12. The Safety Focused Operations Manager again directed the claimant to show his badge; whereas the claimant stated, "No, [expletive] you[.]"[]

5

13. The Safety Focused Operations Manager then removed the badge from the claimant and sent him home, advising him "you're fired[.]"[]

(*Id.* at 1-2.)

Claimant appealed to the Board. (C.R., Item No. 12.) The Board adopted and incorporated the Referee's findings of fact and conclusions of law and affirmed the order of the Referee. (C.R., Item No. 14 at 1-2.) In so doing, the Board offered the following reasoning, addressing the numerous issues raised by Claimant in his appeal to the Board:

> The Board does not find credible the claimant's testimony that he was unaware that the individual who was requesting his badge during the incident of May 14, 2019, was a manager and was acting within his authority throughout the incident, his assertion that the employer had an ulterior motive in discharging him, or his assertion that his objectionable behavior was caused by pain that he was allegedly experiencing. Even if the employer had not had a specific policy in place, the claimant's profanity-laced insubordinate behavior is beneath the standards of behavior that an employer has the right to expect from its employees.
>
> The claimant asserts that Employer's appeal from the June 7, 2019, determination was untimely because it was filed on June 24, 2019, which was beyond the statutory deadline of 15 days contained in Section 501(e) of the Law[, 43 P.S. § 821(e)]. The claimant is mistaken. Because the 15th day was Saturday, June 22, 2019, the appeal deadline was extended to the following Monday, June 24, 2019, pursuant to 1 Pa. Code § 31.12.
>
> Regarding the claimant's request that the Board disqualify the employer's tax agent for allegedly engaging in the unauthorized practice of law in filing the appeal dated June 24, 2019, the claimant's request is denied. In *Harkness v.* [*Unemployment Compensation Board of Review*, 920 A.2d 162 (Pa. 2007)], the Supreme Court held that proceedings before the [Board] do not constitute the practice of law. Moreover, Section 214 of the Law[2] permits non-attorney representation at proceedings before . . . the Referee and the Board. The Board concludes that this would also include filing an appeal on behalf

---

[2] Added by the Act of June 15, 2005, P.L. 8, 43 P.S. § 774.

6

of a party as a representative. Finally, Section 214 of the Law does not violate the Supreme Court's authority to regulate the practice of Law.

Regarding the claimant's request that the Board disqualify the Referee who presided over his hearing because the Referee's Pennsylvania law license is currently "inactive[,]"[] the claimant's request is denied. There is no requirement that the occupant of the position of "Appeals Referee" (Job Code 07310) be a licensed attorney.

Finally, the Referee's conduct of the hearing was proper and in accordance with the requirements of due process.

(*Id*.) Claimant filed a request for reconsideration of the Board's decision, which the Board denied. (C.R., Item Nos. 15, 17.)

## II. ISSUES

On appeal to this Court,[3] Claimant argues that: (1) the Board erred in concluding that Employer's appeal from the Service Center's June 7, 2019 decision was timely; (2) substantial evidence does not exist to support the Board's finding that Remaly had the authority to record tardiness and check his badge; (3) the Board erred in concluding that Claimant's conduct was not justified by good cause; (4) the Board erred in concluding that Employer's appeal was properly filed; and (5) the Board erred in concluding that the Referee conducted the hearing without bias and in concluding that the Referee did not need an active law license to preside over the hearing.

### A. Timeliness of Appeal

Claimant first argues that Employer's appeal was untimely. Section 501(e) of the Law provides that a determination of an Unemployment Service Center shall be final unless an appeal is filed within fifteen calendar days after such notice is

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

**(Footnote continued on next page…)**

7

personally delivered to the parties or mailed to their last known post office address.[4] Section 501(e) is supplemented by the General Rules of Administrative Practice and Procedure, 1 Pa. Code § 31.12, which provides, in relevant part: "The last day of the [appeal] period so computed shall be included, unless it is Saturday, Sunday or a legal holiday in this Commonwealth, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday nor a holiday." (*Id.*) Section 101.82 of the Board's regulations, 34 Pa. Code § 101.82, provides that a party may file a written appeal via fax transmission. Furthermore, when filed via fax transmission, the filing date of the appeal will be determined first by the date of receipt imprinted by the fax machine of the unemployment compensation authorities. 34 Pa. Code § 101.82(b)(3)(i)(A). If no such legible imprint exists, then the date of filing shall be determined by the date of transmission imprinted on the faxed appeal by the sender's fax machine. 34 Pa. Code § 101.82(b)(3)(i)(B). "If the faxed appeal is received without a legible date of transmission, the filing date will be the date recorded by the Department, the workforce investment office[,] or the Board when it receives the appeal." 34 Pa. Code § 101.82(b)(3)(i)(C).

Here, the Service Center mailed the Notice of Determination (Notice) to the parties on Friday, June 7, 2019. The fifteen-day period for appeal would have resulted in an appeal being due the following Saturday, June 22, 2019, and, therefore,

---

[4] Section 501(e) of the Law provides:

(e) Unless the claimant or last employer or base-year employer of the claimant files an appeal with the board, from the determination contained in any notice required to be furnished by the department under section five hundred and one (a), (c) and (d), within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address, and applies for a hearing, such determination of the department, with respect to the particular facts set forth in such notice, shall be final and compensation shall be paid or denied in accordance therewith.

the appeal period automatically extended to the following Monday—*i.e.*, June 24, 2019. *See* 1 Pa. Code § 31.12. This is consistent with the Notice, which specifically identified June 24, 2019, as the last day to file an appeal. (C.R., Item No. 5 at 1-3.) A review of the record reveals the following: (1) the first page of the appeal is stamped "received" by the Referee's office with a date of June 28, 2019; (2) a fax transmission date and time of June 24, 2019, at 11:40 a.m., is imprinted on the top of each page of the appeal letter; and (3) another fax transmission date and time of June 24, 2019, at 12:40 p.m., is imprinted on the bottom of each page of the appeal letter, along with the words "Received Time." Thus, it appears that Employer faxed the appeal letter on June 24, 2019, at 11:40 a.m.; it was received by unemployment compensation authorities that same day at 12:40 p.m.; and the Referee's office stamped it "received" on June 28, 2019. (C.R., Item No. 6 at 1-9.) Under this scenario, the date of receipt imprinted by unemployment compensation authorities—June 24, 2019—is the controlling date, and the appeal is timely filed.

### B. Substantial Evidence

We next consider whether substantial evidence exists in the record to support the Board's finding that Remaly was a manager with authority to record employee tardiness and check Claimant's badge. Substantial evidence has been defined by this Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Murphy v. Dep't of Pub. Welfare, White Haven Ctr.*, 480 A.2d 382, 386 (Pa. Cmwlth. 1984). When determining whether substantial evidence supports a finding of the Board, this Court examines the testimony in the light most favorable to the prevailing party. *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). All reasonable and logical

9

inferences are drawn in the prevailing party's favor. *Id*. The Board's findings of fact are binding on appeal if, after a comprehensive review of the record, there is substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). This is so even when evidence exists in the record that could support a contrary conclusion. *Johnson v. Unemployment Comp. Bd. of Rev.*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986). Moreover, as the ultimate finder of fact, the Board has authority to make determinations of credibility which are "not subject to re-evaluation on judicial review." *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985) (quoting *Miller v. Unemployment Comp. Bd. of Rev.*, 405 A.2d 1034, 1036 (Pa. Cmwlth. 1979)).

Claimant argues that substantial evidence does not exist in the record to support a finding that Remaly was a manager with authority to record employee tardiness and check Claimant's badge. We disagree. In the first instance, Employer stated in its appeal that Claimant was dismissed for insubordination for failing to provide his badge and for making derogatory and inappropriate comments to the "op[eration]s *manager*." (C.R., Item No. 6 at 3 (emphasis added).) Employer, therefore, represented in its appeal letter that Remaly is a manager. Furthermore, Employer appointed Remaly to testify on Employer's behalf, and twice during his testimony he confirmed that, in his position as Safety Focused Operations Manager, he was bestowed with managerial authority to document the tardiness of employees, including viewing their badges. (C.R., Item No. 10 at 9, 29.)[5] He further testified

---

[5] Claimant makes an unfounded assertion that Remaly's testimony concerning Claimant's termination was hearsay. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1250 (Pa. Cmwlth. 2009). In unemployment compensation cases, "[h]earsay evidence, admitted without objection, will be given its natural probative effect and may support a finding if it is corroborated by any competent evidence of record." *Id.* at 1250-51 **(Footnote continued on next page…)**

that, as a manager, he had the power to terminate employees for insubordination. (*Id.* at 30.) Both the Referee and the Board found Remaly's testimony to be credible. (C.R., Item No. 11 at 3; C.R., Item No. 14 at 1.) The Board also specifically *discredited* Claimant's testimony that he was unaware that Remaly was a manager. (C.R., Item No. 14 at 1.) We, therefore, conclude that substantial evidence in the record exists to support the Board's finding that Remaly was a manager and had authority to act as he did during the incident.

## C.  Willful Misconduct

Claimant next challenges the Board's conclusion concerning willful misconduct. Section 402(e) of the Law provides that an employee is ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." While not explicitly defined in the Law, willful misconduct has routinely been characterized by this Court as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of [an employer's work] rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or; (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017). It is well-established that "[w]hether conduct rises to the level of willful misconduct is a question of law to be

---

(citing *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366 (Pa. Cmwlth. 1976)). While Remaly initially testified that he believed someone from Employer's Human Resources office had ultimately fired Claimant, he later recanted and said it was likely that he fired Claimant during the incident. (C.R., Item No. 10 at 30.) This testimony was based on Remaly's personal knowledge. Testimony based on personal knowledge is not hearsay. *See* Pa.R.E. 602; *Cmwlth. v. Johnson*, 838 A.2d 663, 673 (Pa. 2003), *cert. denied*, 543 U.S. 1008 (2004). Furthermore, Claimant testified that Remaly told him: "[Y]ou're fired." (C.R., Item No. 10 at 19.)

11

determined by this Court." *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). The initial burden rests with the employer to show willful misconduct on the part of the employee. *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). If willful misconduct is based on a violation of an employer's policy or work rule, the employer must establish the rule's existence, its reasonableness, and that the employee was aware of the rule when the employee violated it. *Brown*, 49 A.3d at 937. Even absent an employer policy or work rule, an employee's use of vulgar and abusive language toward a superior, when unprovoked and greater than *de minimis*, can constitute willful misconduct. *Brown*, 49 A.3d at 937; *Allen v. Unemployment Comp. Bd. of Rev.*, 638 A.2d 448, 450-51 (Pa. Cmwlth. 1994). Once the employer makes a showing of willful misconduct, the burden shifts to the employee to establish that good cause justified his conduct. *Brown*, 49 A.3d at 937 (citing *Gillins v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1150, 1156 n.3 (Pa. 1993)).

Employer has a policy that provides that an employee may be discharged for comments or communications that are threatening, violent, intimidating, or malicious. (C.R., Item No. 6 at 5.) Employer also has a policy that provides that employees may be terminated for engaging in insubordination or the refusal to follow work instructions. (*Id.*) Remaly testified that Employer's policies are posted on the front board in the facility in which Claimant worked. (C.R., Item No. 10 at 11.) Claimant disputed Remaly's testimony, however, arguing that although he was aware that Employer had a policy on acceptable employee conduct, he never received the specific Employer policies referenced above and his employee handbook was out of date and/or missing pages. (*Id.* at 12-13.) When the Referee asked Claimant if he was aware of the Employer policies, Claimant

12

responded: "Yes and no." (*Id.* at 13.) The Referee concluded that Claimant knew or should have known of Employer's policies, which findings were adopted by the Board in its order. (C.R., Item No. 11 at 1-2; C.R., Item No. 14 at 2.)

Whether Claimant was actually aware of Employer's policies is irrelevant. We agree with the Board that, even if Employer had *no* policy prohibiting such conduct, Claimant's unprovoked, profanity-laced behavior fell below the standards of behavior Employer had a right to expect from Claimant. *See Waverly Heights, Ltd.*, 173 A.3d at 1228. There is no dispute that Claimant used vulgar and abusive language toward Remaly. Claimant testified that when Remaly asked where he was going to punch in, he responded: "[W]here the [expletive] do you think I am going to punch in at?" (C.R., Item No. 10 at 17-18.) After Remaly demanded his badge a second time, Claimant answered: "[N]o, [expletive] you." (*Id.* at 19.) There is also no dispute that Claimant failed to provide his badge to Remaly for documentation and, therefore, violated a reasonable directive by a superior who possessed, at the very least, apparent authority to demand his badge. *See, e.g.*, *ATM Corp. of Am. v. Unemployment Comp. Bd. of Rev.*, 892 A.2d 859, 866-68 (Pa. Cmwlth. 2006) (concluding that employee's refusal to submit to background check constituted insubordinate behavior even when background checks were not specifically required by employer's policies). We, therefore, conclude that Employer met its initial burden of showing that Claimant engaged in willful misconduct.

Our analysis, however, does not end there, as Claimant appears to argue that he had good cause for his willful misconduct. Claimant argues that the incident was provoked by Remaly, because Remaly was not a manager and was acting outside his authority throughout the incident. Claimant maintains that Remaly was an

13

"imposter" manager who was hazing him, and he, therefore, had good cause for his misconduct. (*See* Petitioner's Br. at 10.)

The Board did not rule on whether Claimant had good cause for his willful misconduct. As we noted previously, however, the Board specifically discredited Claimant's testimony that Claimant was unaware that Remaly was a manager. (C.R., Item No. 14 at 1.) The Board also adopted and incorporated the Referee's findings of fact numbers five and six, along with the Referee's reasoning to support them, which detail Claimant's failed attempt to obtain an answer from upper management regarding Remaly's authority. The Referee explained: "[C]laimant admitted that he never received a response from management when he inquired about the Safety Focused Operations Manager's credentials and never asked to speak with higher management during the incident while refusing to comply [with Remaly's directive] and before using profanities." (C.R., Item No. 11 at 3.) Based upon the findings of fact and the credibility determinations of the Referee and Board, we conclude that Claimant did not have good cause for his misconduct. Claimant had ample opportunity to resolve any doubts regarding Remaly's authority prior to or during the incident by speaking directly with his known managers or with Remaly himself. (*See* C.R., Item No. 10 at 21-22); *see also Luketic v. Unemployment Comp. Bd. of Rev.*, 386 A.2d 1045, 1048 (Pa. Cmwlth. 1978) (holding that reasonable questions regarding superior's statements or authority do not constitute willful misconduct). Remaly specifically testified that, had Claimant requested Remaly verify his managerial position and authority with upper management, he would have done so, as he had for other employees in the past. (*Id.* at 30.) Claimant instead resorted to unprovoked, profanity-laced behavior. Claimant's assumption that Remaly was an "imposter" manager, without more, does not justify his

14

misconduct. We conclude, therefore, that the Board did not err in determining that Claimant's actions constituted willful misconduct, and we further conclude that Claimant did not establish good cause to justify his willful misconduct.

### D. Filing of Employer's Appeal

We next consider whether the Board erred in allowing Danny Robinson, an Unemployment Determination Specialist with TALX UCM Services, Inc. d/b/a Equifax Workforce Solutions (Employer's Representative), to file Employer's appeal. (C.R., Item No. 6 at 3.) Claimant makes two separate arguments in support of his challenge: (1) the Board's procedural rules allow only a non-attorney representative to "represent parties at proceedings," not to file an appeal on a party's behalf; and (2) only an attorney can file legal documents with the Board. (Pet. Br. At 7-9.)

Section 214 of the Law provides: "Any party in any proceeding under this act before the department, a referee or the board may be represented by an attorney or other representative." Section 214 does not discuss the *filing* of an appeal, however, and "proceeding" is not defined elsewhere in the Law. Nevertheless, it is implicit in Section 214 that the filing of an appeal would naturally be included in the representation of a party during a proceeding before the Board. This procedural rule, therefore, does not prevent the filing of an appeal to the Board by a non-attorney representative. Furthermore, in *Harkness*, the Supreme Court of Pennsylvania held that a tax representative of an employer (similar to Employer's Representative here) did not engage in the unauthorized practice of law by representing an employer at an unemployment hearing before a referee of the Board. *Harkness*, 920 A.2d at 169. The Court noted the routine nature of an unemployment hearing, which is "primarily focus[ed] upon creating a factual basis on which a referee will award or

15

deny unemployment compensation benefits." *Id*. at 168. Such non-attorney representatives, the Court stated, are "more akin to facilitators rather than legal practitioners." *Id*. We agree with the Board that the rationale in *Harkness* controls the instant situation and permits the filing of an appeal to the Referee by a non-attorney. Accordingly, the Board did not err in concluding that Employer's Representative had the authority to file Employer's appeal to the Referee.

### E. Referee Qualifications and Bias

Lastly, we address Claimant's contentions that the Referee was biased in favor of Employer's witness, Remaly, and that the Referee should have recused himself because he elected inactive status on his law license. After a thorough review of the hearing transcript, we discern no evidence suggesting bias on the part of the Referee in favor of either party. Rather, we agree wholeheartedly with the Board's conclusion that "the Referee's conduct of the hearing was proper and in accordance with the requirements of due process." (C.R., Item No. 14 at 2.) We further agree with the Board's decision as it relates to the Referee's inactive law license. Claimant cites no requirement that an Appeals Referee be qualified as an attorney, let alone have an *active* law license, in order to hold the position, and we are not aware of any such requirement. Thus, Claimant's arguments are without merit.

### III. CONCLUSION

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas Gerald Kunkle,                         :
                                   Petitioner   :
                                                :
                    v.                          :        No. 1556 C.D. 2019
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                                   Respondent    :

# **O R D E R**


AND NOW, this 7th day of December, 2020, the order of the Unemployment Compensation Board of Review, is AFFIRMED.


_____
P. KEVIN BROBSON, Judge